1  HEINZ BINDER, #87908
   ROBERT G. HARRIS, #124678
2  ROYA SHAKOORI, #236383
   Binder & Malter, LLP
3  2775 Park Avenue
   Santa Clara, CA 95050
4  Telephone: (408)295-1700
   Facsimile: (408) 295-1531
5  Email: Rob@bindermalter.com

6  Attorneys for Debtor and Debtor In
   Possession CMR Mortgage Fund II, LLC

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**DIVISION THREE**

| | |
|---|---|
| In re<br><br>CMR Mortgage Fund II, LLC,<br><br>Debtor. | Chapter 11<br><br>Case Number 09-30788TEC<br><br>Date: December 7, 2009<br>Time: 9:30 a.m.<br>Place: Courtroom 23rd Floor<br>235 Pine Street<br>San Francisco, California |

**MOTION TO APPROVE ENTRY BY DEBTOR INTO AMENDED AND RESTATED STANDSTILL AGREEMENT AND PURCHASE AND SUBORDINATION OF INTERESTS UPON SALE OF REAL PROPERTIES**

Debtor and debtor in possession CMR Mortgage Fund II, LLC (the "Debtor") hereby applies to the Court for an order approving its entry into that Amended and Restated Standstill Agreement ("Agreement") with certain "Investors" (clients of Oxford Investment Partners LLC). The purpose of the Agreement is to obtain a tiered forbearance from the Investors as to real property which they might otherwise foreclose in exchange for (a) interest payments, (b) sales of collateral by certain dates with corresponding pay-downs of liens, (c) purchases of the Investors' junior interests against collateral with sales proceeds, and (d) subordination of the Debtor's claims against the collateral until the Investors' have been repaid.

The Debtor respectfully represents as follows in support of this Motion:

1. On March 31, 2009, the Debtor filed a Voluntary Petition under Chapter 11 with the Clerk of the above-entitled Court. No Receiver or Trustee has been appointed, and the Debtor remains a Debtor in Possession pursuant to 11 U.S.C. under Chapter 11 of title 11, United States Code sections 1107 and 1108.

2. The Debtor operates a real estate fund and was engaged in the business of receiving funds from individuals and entities to invest, directly and indirectly, into commercial mortgage loans funding a variety of real estate projects (both improved and unimproved) predominantly in California and also in other states.

3. The CMR Funds along with other investors, (a) own participations in fractionalized notes issued by borrowers that are secured by deeds of trust against borrowers' real property, (b) own interests in REO Entities which, in turn, hold and operate properties which have been foreclosed by the CMR Funds or direct investors, and (c) hold direct ownership of a smaller number of properties which have more recently been foreclosed and not transferred into an REO Entity.

4. The Dyer Mountain property is owned by Dyer Management, LLC, which is, in turn, 40% owned by CMR Fund II, 24% owned by CMR Fund III, and 34% owned by Frontier Ridge, LLC. The Dyer Mountain property is a planned mountain resort consisting of some 7,000 acres with a projected 500,000 of commercial and lodging space and 4,000 residential units. The Dyer Mountain property is adjacent to the existing Lake Almanor resort in Plumas County. This property has a value of $30 to $70 million.

5. The Dyer Mountain property is subject to three deeds of trust. A first priority deed of trust secures a $10 million note (with a current legal balance of $12.8 million) against this property. 25% of this note and deed of trust is held by First Street Commercial Mortgage Fund. The remaining 75% is held by certain "Investors" (clients of Oxford Investment Partners LLC). A second priority deed of trust secures another $10

million note (with a current legal balance also of $12.8 million) against this property. CMR Fund I owns 3.9%, CMR Fund II owns 9.6%, and CMR Fund III owns 41.5% of this note. The remaining 45% is owned by a number of other individual investors. A third priority deed of trust secures a third $10 million note (with a current legal balance of $18.7 million) that is 80% owned by CMR Fund II and 20% owned by CMR Fund III. In total Fund II has an outstanding legal balance of $16.2 million secured by the Dyer Mountain property.

6. The Myrtle Beach property consists of 224 acres in South Carolina that is being sub-divided into 694 lots but as to which home and lot sales have commenced. This property has a value of $35 to $60 million.

7. The Myrtle Beach property is subject to a first deed of trust securing a note in the amount of $11.5 million (with a current legal balance of $12.7 million) that is 96% owned by the Investors. A second deed of trust secures a note in the amount of $3.7 million (with a current legal balance of $4.2 million) that is held by 13 individual direct investors. The third deed of trust secured a note in the amount of $9.6 million (with a current legal balance of $10.4 million) which is owned 63% by CMR Fund II and 37% by CMR Fund III. Fund II has an outstanding legal balance of $5.8 million secured by the Myrtle Beach property.

8. The Casa Grande property consists of a 900 acre master planned development community with 3,200 lots in 5 phases. This property is owned by 5 Casa Grande Land, LLC which is, in turn, wholly owned by CMR Fund II. The property has a value of $33 to $82 million.

9. The Casa Grande property is encumbered by a first deed of trust securing a note of $20 million (with a current legal balance of $24.4 million) that is owned 1.5% by CMR Fund I, 22% by CMR Fund II, 65% by the Investors and 11.5% by other

individual investors.[1] This property is also encumbered by a second deed of trust that secured an $18 million note (with a current legal balance of $25.8 million) owned 50.5% by CMR Fund I, 14.4% by CMR Fund II, and 35.1% by CMR Fund III. Fund II has an outstanding legal balance of $3.7 million secured by the Casa Grande and Brisbane properties.

10. The Antioch property consists of 50 acres of vacant land near Antioch, California. 36 acres is planned for the development of some 209 townhomes. This property has a value of $15 to $35 million.

11. The Investors hold a first deed of trust securing a note in the amount of $5.5 million (with a current legal balance of $7.1 million). CMR Fund III holds a second deed of trust securing a note in the amount of $5.5 million (with a current legal balance of $6.1 million). Fund II does not have notes secured by the Antioch property.

12. The Dyer Mountain property, the Myrtle Beach property, the Casa Grande property, and Antioch property (collectively, the "Investors Properties") are all subject to notes held by the Investors that are in default. The Investors are capable of proceeding to foreclosure against any or all of the Properties without delay.

13. Neither the CMR Funds nor the entities which own the Investor Properties have sufficient cash or liquid capital to cure and reinstate the Investors' defaulted notes. It is for this reason that the CMR Funds negotiated and, subject to this Court's approval, propose to enter into the Amended and Restated Standstill Agreement (the "Agreement").

14. The Agreement provides for forbearance by the Investors as to four loans (the "<u>Loans</u>") with the underlying properties securing the Loans being the Investor Properties in which the Debtor holds either or both of junior or equity positions. The loans are as follows: the Dyer Loan, the Myrtle Loan, the Antioch Loan, and the Casa

---

[1] This note is also secured by a second deed of trust against the quarry located at 1 Quarry Road, Brisbane, California.

Grande Loan.

15. The CMR Funds have agreed (1) to use certain proceeds from loan payoffs received by the CMR Funds upon the sale of the Dyer and Myrtle Properties to purchase subordinated interests from the Investors in other Loans and REO Properties; and (2) to immediately subordinate their existing fractional interests in the Casa Grande Deeds of Trust to the interests in that Loan held by Investors. In return, the Investors have agreed to refrain from foreclosing on the Investor Properties and thereby extinguishing the junior liens of the CMR Funds so long as the conditions in the following paragraphs are met.

16. The Investors shall forebear from foreclosing any of the 4 Investor Properties or selling the 2 REO Properties (the "Forbearance") until the dates indicated:

(a) If the CMR Funds make interest payments to the Investors on the Myrtle Loan and the Dyer Loan ("Myrtle/Dyer Interest Condition") then the Forbearance shall extend to May 1, 2010. The Agreement calls for the payment of interest to the Investors on the Dyer Mountain property from 2/1/09 and the Myrtle Beach property from 3/1/09. The monthly accrual on the former debt is $50,000 per month and on the latter is $76,333 per month. To bring the accrued interest current on December 7, 2009 would require payments of $460,000 on the Dyer Mountain property and $778,600 on the Myrtle Beach property.

(b) If condition (a) is satisfied, the Dyer Property or the Myrtle Property is sold, and the CMR Funds use $1 million to $5.1 million from the former or a maximum of $4.5 million as to the latter from monies coming to them to purchase subordinated interests in other Loans and REO Properties presently held by Investors (the "Transfer Assets"), then the Forbearance shall extend to May 1, 2011.

Alternatively, the CMR Funds can pay the Investors $5 million to purchase a subordinated interest in the Casa Grande Loan.

    (c) If conditions (a) and (b) are satisfied and the CMR Funds either sell the remaining Myrtle or Dyer property or, if they have not done so already, purchase the subordinated interest in the Casa Grande Loan, then the Forbearance shall extend to May 1, 2012.

17. The CMR Funds may, upon further motion to the Court, request permission to provide financing to a purchaser by agreeing to carry a note ("Carry Back Note") in lieu of a cash payoff of all or a portion of their junior mortgage loans. Any such Carry Back Note, if proposed and approved, will be secured by a new first deed of trust on the property sold. If, as a result of the CMR Funds accepting a Carry Back Note in lieu of cash, the cash available to the CMR Funds from sale of the property is less than the maximum Transfer Payment for the property sold (i.e., $5.1MM or $4.5MM), then the Investors have the option of taking an assignment of a senior participation in the Carry Back Note for the difference, in exchange for subordinated interests in the other Loans and REO Properties. However, in any event the minimum cash Transfer Payment is $1MM.

18. The CMR Funds may alternatively elect not to utilize more than $1MM of the cash from Dyer or Myrtle Loan payoffs for the purchase of subordinated interests in other Loans and REO Properties, and instead may elect to retain all or a portion of the excess cash up to a maximum of $3MM. If the CMR Funds make this election they will be required to purchase more subordinated interests from Investors than would otherwise have been required (i.e., more than $5.1 MM or $4.5 MM, as applicable), and the consideration for such purchase (in addition to the minimum $1MM) would be the assignment to the Investors of a senior participation in all or a portion of any Carry Back Note.

19. To the extent that any portion of a Carry Back Note is assigned by the

CMR Funds to the Investors in exchange for subordinated interests in other Loans and REO Properties, the CMR Funds would also subordinate their retained interest in the Carry Back Note to the senior participation in such Carry Back Note transferred to the Investors.

20. California Mortgage Realty, Inc., the Investors' manager and loan servicing agent, will by the terms of the Standstill Agreement, receive reimbursement for costs incurred related to protecting the Investors' security interest in Loans, which is payable before the Investors or the CMR Funds receive any return from any revenues or recoveries generated from Loans and REO Properties (such as by sale or refinance of the underlying property of collection of rents)

21. Separately from the standstill and as to all Loans and REO Properties described above, the Investors have also agreed to take no steps to foreclose on two specific Investor Properties (the Antioch Loan Property and the Casa Grande Property) until May 1, 2012, regardless whether any of the above Standstill Conditions have been satisfied, so long as the Myrtle/Dyer Interest payments are made or, in the alternative, the CMR Funds make certain interest payments relating solely to the Casa Grande Loan and the Antioch Loan.

22. CMRI will remain entitled to receive from Investors the amounts otherwise payable to it by its contract but will be prohibited from collecting thereon until all Loans are paid off and CMR Funds become available to pay Investors,

23. Finally, regardless whether the Investors own a majority or minority of the ownership interests in any Loans after the purchase of subordinated interests therein by the CMR Funds, such Investors shall have the right to foreclose the deed(s) of trust securing those Loans if the standstill agreements described above are no longer in place.

24. The Debtor believes that it and the other CMR Funds can and will sell and

close on at least two and perhaps three of the Investor Properties, and/or enter into Joint Ventures to fund ongoing entitlement and development, and/or generate other cash in the time frames required under the Agreement. The benefits accruing from sales of any of the Investor Properties are the cessation of interest on the Investor loans and the removal of liens against unsold Investor properties so as to increase flexibility in the structure of sales.

25. All the CMR Funds believe that no workable alternative to the Agreement exists short of individual bankruptcy filings by the owners of the Investor Properties. The cost of compliance with the Agreement is admittedly high. Unfortunately, the cost of 4 new bankruptcy filings is potentially higher and fraught with risk and uncertainty. The Debtors, in their business judgment, therefore believe that authorization for them to enter into the Agreement and to subordinate their liens as requested is appropriate.

WHEREFORE, the Debtor respectfully requests that the Court grant the Motion and issue an order authorizing its entry into the Agreement, the purchase of the Investors' junior interests against collateral with sales proceeds, and subordination of the Debtor's claims against the collateral until the Investors' have been repaid.

Dated: November 17, 2009          BINDER & MALTER, LLP


By:/s/ Robert G. Harris
      Robert G. Harris

Attorneys for Debtor and Debtor In Possession
CMR Mortgage Realty Fund II, LLC